**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Brodrick Jamar Jenkins, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  3:13-cv-67 |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Stutsman County Correctional Center | ) | |
| Commissioner Chairman, Mark T. Klose | ) | |
| (in his official capacity), Tracey Trapp, | ) | |
| Stutsman County Correctional Center | ) | |
| Administration Officer (in her official and | ) | |
| individual capacity), Jolene Unknown Last, | ) | |
| Stutsman County Correctional Center | ) | |
| C.B.M Managed Service manager (in her | ) | |
| official and individual capacity), and | ) | |
| Marlin C. Sejnoha, Jr., C.B.M. Managed | ) | |
| Service C.E.O. | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Brodrick Jamar Jenkins (Jenkins), a federal inmate confined at the Stutsman

County Correctional Center (SCCC) during 2013, filed an amended complaint[1] alleging  his

religious rights were "hindered and obstructed" by the defendants in violation of 42 U.S.C. §

1983, 42 U.S.C. § 2000cc-1, 42 U.S.C. § 2000bb-3, the Free Exercise Clause of the First

Amendment of the United States Constitution, the United Nations' Universal Declaration of

Human Rights, the North Dakota Constitution, and North Dakota Century Code section 12-44.1-

14.  (Doc. #14, 7).  On August 14, 2014, defendants Mark T. Klose (Klose), SCCC

Commissioner Chairman, and Tracey Trapp (Trapp), SCCC Administration Officer, filed a

motion for summary judgment, (Doc. #54), and memorandum in support of the motion, (Doc.

---

[1]Jenkins filed a handwritten complaint on October 3, 2013.  (Doc. #13).  On October 17,
2013, after receiving updated forms from the court, Jenkins filed a typed amended complaint,
which was nearly identical to his initial complaint.  (Doc. #14).

#55).  On August 18, 2014, defendants Marlin C. Senjoha, Jr. (Senjoha), C.B.M. Managed

Service C.E.O., and Jolene Taszarek (Taszarek), C.B.M. Managed Service Manager, also filed a

motion for summary judgment, (Doc. #58), and brief in support of the motion, (Doc. #59).

Jenkins did not respond to the motions for summary judgment.[2]

## Summary of Recommendation

Jenkins has not responded to the motions for summary judgment and the time to do so

has expired, so the motions could be granted under Local Civil Rule 7.1(F).  Additionally, under

the Prison Litigation Reform Act (PLRA), prisoners must exhaust their administrative remedies

before filing claims arising under federal law, and claims filed before exhaustion must be

dismissed.  42 U.S.C. § 1997e(a); <u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003).  Jenkins

did not comply with the administrative exhaustion requirement as to his federal law claims.

Jenkins' remaining claims do not arise under federal law, and, because no viable federal claim

remains, the court should decline to exercise supplemental jurisdiction over the remaining

claims.  Therefore, it is **RECOMMENDED** that the court find Jenkins failed to exhaust his

administrative remedies as to his federal law claims, that the court decline to exercise

supplemental jurisdiction over the remaining claims, that the motions for summary judgment be

**GRANTED**, and that the complaint be **DISMISSED** without prejudice.

---

[2]Jenkins' response to the first motion for summary judgment was due September 4, 2014, and his response to the second motion for summary judgment was due September 8, 2014.  On October 27, 2014, Jenkins filed a letter stating that he had been transferred to a different prison on September 16, 2014, and that his "property was stolen including my legal material[.]"  (Doc. #65, 1).  On December 15, 2014, Jenkins filed a second letter reiterating his claim that his "personal and legal . . . property was stolen, mis[]placed, destroyed[,] and[/]or disposed of." (Doc. #66, 1).  Although Jenkins states his legal materials were no longer available to him after September 16, 2014, his responses to the motions for summary judgment were due before that date.

Jenkins has also failed to raise a substantively viable claim. In the event the court does not dismiss Jenkins' claims as recommended above, it is then **RECOMMENDED** that the court find Jenkins failed to identify any genuine issue of material fact, that the motions for summary judgment be **GRANTED**, and that Jenkins' complaint be **DISMISSED** with prejudice.

## Facts

Jenkins' complaint concerns alleged deficiencies in food provided to him during the Islamic observance of Ramadan.[3] C.B.M. Managed Services (CBM) is contracted to provide food services at SCCC. (Doc. #61, 2). Jenkins, a federal inmate, was confined at SCCC from February 2013 through August 2013, pending assignment to a federal prison. (Doc. #56, 2). On July 10, 2013, Jenkins submitted a kite[4], notifying SCCC he wished to participate "for the next 29 days for the [I]slamic fasting period [of Ramadan.]" (Doc. #5-1, 2). Jenkins stated that, during the fasting period, he could not "eat pork only kosher foods[,]" stated he was allergic to turkey, noted he could not "eat during the day light time[,]" and asserted the fast should conclude with a "feast . . . as a celebration[.]" Id.

The SCCC policy manuals describe the process to be followed to address dietary requests related to religious observances. Upon receiving an inmate's request to participate in the Ramadan fast, SCCC notifies CBM. (Doc. #61, 2). CBM then provides the inmate with meals in accordance with the "Religious Diets policy section of the CBM Diet Manual." Id. With

---

[3]"Islam" refers to "the religious faith of Muslims[.]" Islam Definition, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/islam (last visited March 2, 2015). "Muslim" refers to "an adherent of Islam[.]" Muslim Definition, http://www.merriam-webster.com/dictionary/muslim (last visited March 2, 2015).

[4]"Kite" is a commonly used term among prisons for any written correspondence from an inmate to the facility's administration.

regard to Muslim dietary practices, the CBM Diet Manual provides, "A regular diet excluding pork and pork derivatives or a vegetarian diet should be served to individuals of Muslim faith. . . . During Ramadan, Muslim inmates participating in the fast receive the approved religious meals before sunrise and after sunset." (Doc. #61-4, 1). The CBM Diet Manual also provides a one week sample menu for Ramadan. (Doc. #61-5).

From July 10, 2013, through August 6, 2013, Jenkins submitted five kites, claiming the dietary accommodations provided to him were inadequate. (Doc. #5-1, 3-7). Jenkins claimed that the portions of his evening meals were not large enough, that he did not receive an adequate amount of daily calories, that he was entitled to "hot meals each day[,]" that he was given "jello" that contained pork products, and that, on four occasions, his breakfast was not delivered until after sunrise. Id. In his amended complaint, Jenkins claims the "fast should have been broken with a feast of kosher food items supplied by the jail, but it wasn't." (Doc. #14, 6). The defendants state that, during the time period at issue, Jenkins received food of an average of 2800 total calories per day, (Doc. #60, 4; Doc. #61, 4), and that CBM was informed by the manufacturer of the "jello" that the product did not contain pork or pork products, (Doc. #59, 6; Doc. #61, 5). The defendants acknowledge "it was not always feasible to provide hot meals to [Jenkins] during his Ramadan fast" because Jenkins was unable to eat during daylight. (Doc. #60, 4; Doc #61, 4). Because "CBM's understanding is that Muslim/Islamic dietary law does not require a feast at the end of the Ramadan fast[,] . . . CBM does not serve such a feast as a matter of course[.]" (Doc. #61, 5). The defendants informed Jenkins they would "not provide a final feast to break the fast[,]" but noted Jenkins could purchase additional food through the inmate commissary. (Doc. #57-7, 1). Defendants have filed exhibits detailing items available

from the commissary, (Doc. #57-1), along with a report showing the running balance of Jenkins' inmate account and items he purchased from the commissary during the relevant time period. (Doc. #57-2).

SCCC outlines a grievance procedure for inmates dissatisfied with their confinement. (Doc. #57-5, 8). The grievance procedure requires an inmate to write the complaint on a grievance form and submit the form to a correctional officer, who forwards the grievance to a sergeant. Id. An inmate who is not satisfied with the response "may appeal the decision within 24 hours by filling out an appeal form. Sergeants shall have acted upon the matter and have provided a written response within 15 days." Id. Although Jenkins submitted kites regarding his Ramadan fasting concerns and claims he "wrote . . . one grievance[,]"[5] (Doc. #14, 2), he does not assert that he appealed any decision within twenty-four hours, as required by the grievance procedure. Rather, Jenkins filed the instant suit, claiming violations under 42 U.S.C. § 1983, 42 U.S.C. § 2000cc-1, 42 U.S.C. § 2000bb-3, the Free Exercise Clause of the First Amendment of the United States Constitution, the United Nations' Universal Declaration of Human Rights, the North Dakota Constitution, and North Dakota Century Code section 12-44.1-14. (Doc. #14). Defendants moved for summary judgment, (Doc. #54; Doc. #58), but Jenkins did not respond.

**Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex

---

[5]The record does not include a copy of any grievance form submitted by Jenkins, other than his kites. However, the kite Jenkins submitted on August 6, 2013, was addressed to Trapp, (Doc. #5-1, 7), and Trapp's response on August 7, 2013, begins, "This is in response to the grievance you have brought to my attention concerning Ramadan accommodations at this facility[,]" (Doc. #57-7, 1) (emphasis added).

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Rule 56 of the Federal Rules of Civil Procedure

"mandates the entry of summary judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case."  <u>Celotex</u>, 477

U.S. at 322.  The moving party bears the burden of establishing the basis for its motion.

<u>Donovan v. Harrah's Md. Heights Corp.</u>, 289 F.3d 527, 529 (8th Cir. 2002).  When the moving

party demonstrates no material facts are in dispute, the nonmoving party then bears the burden of

setting forth facts showing a genuine issue for trial.  <u>Id.</u>  "The court must view all facts and

inferences in the light most favorable to the nonmoving party."  <u>Id.</u>

<b>Discussion</b>

**1.      Procedural Matters**

Local Civil Rule 7.1(A)(1) provides that adverse parties to dispositive motions have

twenty-one days after service of the memorandum supporting the motion to serve and file a

response to the motion.  Jenkins failed to respond to the defendants' motions for summary

judgment, and his time to do so has expired.  "An adverse party's failure to serve and file a

response to a motion may be deemed an admission that the motion is well taken."  D.N.D. Civ.

L.R. 7.1(F).  Therefore, this court may deem Jenkins' failure to respond as an admission that the

motions for summary judgment are well taken, and grant the motions on that basis.

Further, Jenkins has not complied with a threshold requirement of the PLRA, which

applies to his claims arising under federal law.  <u>See</u> 42 U.S.C. § 1997e(a) (providing "[n]o action

shall be brought . . . under section 1983 of this title, or any other Federal law" until a prisoner

exhausts administrative remedies).  Congress enacted the PLRA in response to the large number

of prisoner complaints filed in federal court.  <u>Jones v. Bock</u>, 549 U.S. 199, 202 (2007).  A key

provision of the PLRA requires those prisoners challenging prison conditions to exhaust prison grievance procedures prior to bringing suit. Id. at 204. The PLRA's exhaustion requirement provides, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If a prisoner has not exhausted administrative remedies before filing suit, dismissal of the suit is mandatory. Johnson, 340 F.3d at 627. SCCC's grievance procedure requires an inmate who is dissatisfied with a grievance response to appeal the decision within twenty-four hours by completing an appeal form. (Doc. #57-5, 8). While Jenkins claims he spoke with staff regarding his complaints, submitted kites, and "started the inmate grievance process" by filing "one grievance[,]" he does not assert that he appealed the response to his grievance. (Doc. #14, 2). Because Jenkins did not exhaust administrative remedies before filing suit, his claims arising under federal law should be dismissed.

Jenkins also raises state law claims, which are not subject to the PLRA's exhaustion requirement. See 42 U.S.C. § 1997e(a) (providing no action may be brought under "any . . . Federal law" until a prisoner has exhausted administrative remedies) (emphasis added). However, when a federal court dismisses all federal law claims, the court has discretion to decline supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3); Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009). Jenkins presents no viable federal claims, and, without commenting on the merits of any state law claims, the court should decline to exercise supplemental jurisdiction over any possible state law claims. As discussed below, Jenkins does not raise a viable claim under the Universal Declaration of Human Rights.

## 2.	Substantive Matters

In addition to the procedural defects that support dismissal, various reasons exist for dismissing the suit on its merits.  For example, Jenkins asserts a claim under 42 U.S.C. § 2000bb-3, a provision of the Religious Freedom Restoration Act (RFRA).  (Doc. #14, 4, 7). That act has been held unconstitutional as applied to state and local governments.  <u>City of Boerne v. Flores</u>, 521 U.S. 507, 536 (1997).  SCCC acknowledges it is a "political subdivision of North Dakota[.]"  (Doc. #55, 20).  SCCC is therefore not subject to suit under RFRA, so Jenkins does not have a valid claim under 42 U.S.C. § 2000bb-3.

Following the <u>City of Boerne</u> decision, Congress enacted the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc et seq.  Jenkins also asserts a claim under RLUIPA and under the Free Exercise Clause of the First Amendment.  SCCC "does not deny that it is a 'government' within the meaning of RLUIPA."  (Doc. #55, 17).  To proceed with claims under either RLUIPA or the Free Exercise Clause, plaintiffs must show that the government has imposed a substantial burden on their ability to practice their religion.  <u>Patel v. U.S. Bureau of Prisons</u>, 515 F.3d 807, 813 (8th Cir. 2008).  A substantial burden is defined as a government action that:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

<u>Id.</u> (quoting <u>Murphy v. Mo. Dep't of Corr.</u>, 372 F.3d 979, 988 (8th Cir. 2004)).  Generally, courts find no substantial burden if a government action merely makes practicing a religious belief more expensive.  <u>Id.</u>  In <u>Patel</u>, the Eighth Circuit held that requiring an inmate, who had

requested dietary accommodations for religious reasons, to purchase food from the commissary "does not significantly inhibit, meaningfully curtail, or deny [plaintiff] a reasonable opportunity to practice his religion" because the plaintiff had not proven he could not pay for commissary food. Id. at 814. Likewise, Jenkins has not asserted he was unable to pay for commissary food—which Trapp suggested Jenkins do if Jenkins wished to have a final feast to break the Ramadan fast—and the record demonstrates that Jenkins had funds available in his inmate account and that he purchased items from the commissary during the time period in question. (Doc. #57-2). Because Jenkins has not identified the imposition of a substantial burden, he cannot prevail under RLUIPA or under the Free Exercise Clause.

Additionally, Jenkins acknowledges that he is not claiming any physical injury, (Doc. #14, 6), so the PLRA limits remedies available to him. The PLRA provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Eighth Circuit has concluded prisoners may maintain actions for alleged First Amendment violations without claiming a physical injury; however, in those cases, compensatory damages are not available, and relief is limited to nominal damages, punitive damages, and injunctive and declaratory relief. Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004). Even if Jenkins had an otherwise viable claim, he would not be entitled to compensatory damages, which he seems to request in his complaint. (Doc. #14, 7).

Jenkins also raises a claim under the Universal Declaration of Human Rights. Although that document, a declaration adopted by the United Nations General Assembly, has been

recognized as a "statement of principles[,]" it does not impose any legal obligations on any government officials. Sosa v. Alvarez-Machain, 542 U.S. 692, 734-35 (2004). Jenkins asserts additional claims under the North Dakota Constitution and the North Dakota Century Code.[6] As already discussed, the court should decline to exercise supplemental jurisdiction over any possible state law claims because Jenkins presents no viable federal claims.

The only other remaining claims are those Jenkins raises against Trapp and Taszarek in their individual capacities. Trapp is a government official. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As discussed above, Jenkins has not alleged any violation of a clearly established statutory or constitutional right, and Trapp would therefore be entitled to qualified immunity on Jenkins' claim for damages.

Taszarek, on the other hand, is an employee of CBM, rather than a government official. For private parties to be deemed government actors for § 1983 liability purposes, it must be shown that the private parties acted under color of law and performed a function traditionally reserved exclusively to the government. See Reasonover v. St. Louis Cnty., Mo., 447 F.3d 569, 584 (8th Cir. 2006). Many courts have found that contracted food service providers at

---

[6]Jenkins cites the "Constitution of North Dakota Section 3" in his complaint. (Doc. #14, 7). It seems likely Jenkins is referring to Article I, Section 3, which addresses religious freedom. N.D. Const. art. I, § 3. In his complaint, Jenkins also cites North Dakota Century Code section 12-44.1-14, subdivision 7. (Doc. 14, 7). See N.D. Cent. Code § 12-44.1-14(7) (2013) (providing that the administrator of a correctional facility shall, "[s]ubject to reasonable safety, security, discipline, and correctional facility administration requirements, . . . [e]nsure that inmates may reasonably exercise their religious beliefs.").

correctional facilities are government actors for purposes of § 1983 liability because "the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates." Mozden v. Helder, No. 5:13-cv-5160, 2014 WL 2986711, at *2 (W.D. Ark. July 2, 2014). See also Wilmoth v. Aramark Corr. Serv., LLC, No. 10-5048, 2012 WL 4472147, at *5 (W.D. Ark. Aug. 16, 2012) (food service contractor at a correctional center is a government actor for § 1983 liability purposes); Setzer v. Aramark Corr. Serv., No. 10-5151, 2011 WL 7071078, at *3 (W.D. Ark. Nov. 22, 2011) (contracted food service provider at a detention facility is a government actor and may be liable under § 1983). CBM has contractually assumed SCCC's constitutional obligation to provide nutrition to the inmates of SCCC, and CBM is therefore a government actor for purposes of § 1983 liability. Regarding the distinction between individual capacity and official capacity claims, the Eighth Circuit has stated:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. . . . Personal capacity claims . . . are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

Gorman v. Bartch, 152 F.3d 907, 914 (8th Cir. 1998) (emphasis added) (citations omitted). Taszarek has raised the defense of qualified immunity. (Doc. #59, 11-16). Qualified immunity provides government actors protection from civil damages liability when their conduct is not in violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." Sisney v. Reisch, 674 F.3d 839, 844 (8th Cir. 2012) (affirming district court's finding that government actors sued in their individual capacities were entitled to qualified immunity). As stated above, Jenkins has not alleged any violation of a clearly established statutory or constitutional right, and Taszarek, who is viewed as a government actor,

11

is therefore entitled to qualified immunity.

## Conclusion

Jenkins did not respond to the defendants' motions for summary judgment, he did not exhaust his administrative remedies prior to filing suit, and he failed to identify any genuine issue of material fact in response to the motions for summary judgment. Accordingly, it is

**RECOMMENDED** that:

(1)     Defendants' motions for summary judgment be **GRANTED**;

(2)     Jenkins' federal claims be **DISMISSED** without prejudice if based upon Jenkins' failure to exhaust his administrative remedies, or with prejudice if based upon Jenkins' failure to identify any genuine issue of material fact;

(3)     Jenkins' remaining claims be **DISMISSED** without prejudice; and

(4)     The court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 4th day of March, 2015.

/s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation and by filing with the Clerk of Court no later than **March 18, 2015**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit

the right to seek review in the Court of Appeals.